IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

LAURIE SOOS                                                      PLAINTIFF

V.                              NO. 13-5111

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration          DEFENDANT


**MEMORANDUM OPINION**

Plaintiff, Laurie Soos, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of the Social Security Administration (Commissioner)

denying her claim for a period of disability and disability insurance benefits (DIB) under the

provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must

determine whether there is substantial evidence in the administrative record to support the

Commissioner's decision. See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed her current application for DIB on April 12, 2010, alleging an

inability to work since January 1, 2002,[1] due to fibromyalgia, interstitial cystitis, and

endometriosis. (Tr. 112-113, 141,148). An administrative hearing was held on January 13, 2012,

at which Plaintiff appeared with counsel and testified. (Tr. 25-61).

By written decision dated April 13, 2012, the ALJ found that during the relevant time

period (January 1, 2002 through the date last insured - December 31, 2007), Plaintiff had an

_____

[1]Plaintiff originally contended her onset date was September 15, 2003 (Tr. 148), but at the hearing, her attorney
amended the onset date to January 1, 2002. (Tr. 33).

-1-

impairment or combination of impairments that were severe - interstitial cystitis and fibromyalgia. (Tr. 13). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found that through the date last insured, Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) except she needs a job that allows for a mixture of positions with both sitting and occasional standing/walking.

(Tr. 14). With the help of the vocational expert (VE), the ALJ determined that through the date last insured, Plaintiff was capable of performing her past relevant work as a receptionist, caterer food service manager, and hotel clerk. (Tr. 19).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on April 10, 2013. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 4). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 8, 9).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnard, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be

-2-

affirmed if the record contains substantial evidence to support it.  Edwards v. Barnard, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing

AO72A
(Rev. 8/82)

past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**III.   Discussion:**

Plaintiff raises the following issues on appeal: 1) The ALJ erred by failing to find that Plaintiff's endometriosis was a severe impairment; 2) The ALJ erred in his RFC determination; and 3) The ALJ erred in his credibility findings. (Doc. 8).

**A.   Severe Impairment:**

Plaintiff argues that Plaintiff's endometriosis was a severe impairment. An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 1520(a)(4)ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § § 404.1521, 416.921. The Supreme Court has adopted a "de minimis standard" with regard to the severity standard. Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cri. 1989).

On September 1, 2005, Plaintiff presented to Parkhill Clinic for Women for in vitro fertilization "due to severe endometriosis." (Tr. 537). Plaintiff became pregnant and gave birth to a boy in June of 2006. (Tr. 372-373, 385). For the next few months, Plaintiff presented to Parkhill Clinic for postpartum visits. (Tr. 534-536). On November 14, 2006, Plaintiff reported

-4-

to Parkhill Clinic that she was doing well and would love to have another child. (Tr. 534). On April 25, 2007, Plaintiff presented herself to Washington Regional Medical Center, complaining of abdominal pain. (Tr. 423). The impression was extrarenal pelvis bilaterally with dilated proximal right ureter, and there was no demonstration of a stone. (Tr. 442).

On October 23, 2007, Plaintiff presented herself to Dr. Thomas R. Dykman, of Fayetteville Diagnostic Clinic, as a new patient. (Tr. 523). She reported a 20 year history of pain affecting her neck, shoulder, upper back and arms. (Tr. 523). Dr. Dykman's impression was as follows:

1. Myalgias likely due to fibromyalgia
2. Low back pain rule out spondyloarthopathy
3. Intolerance of nonsteroidal medications due to dyspepsia.
4. Intermittent spastic colitis

(Tr. 524). On November 27, 2007, Plaintiff reported to Parkhill Clinic that she was having difficulty with her fibromyalgia as well as dyspareunia. The impression was: "Annual exam. Endometriosis with associated pelvic pain." (Tr. 534). The report indicated that Plaintiff did not have reproducible pain on exam. (Tr. 534). It also indicated that Plaintiff was offered oral contraceptive for suppression of endometriosis, and Plaintiff was not interested at that time. (Tr. 534). See Wilson v. Chater, 76 F.3d 238, 241 (8th Cir. 1996)(conditions controlled with diet and medication are not medically severe); Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007)(an impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical and mental ability to do basic work activities). Nor did Plaintiff's treating physicians place any restrictions on her during the relevant period of review.

As noted by Defendant, a mere diagnosis is not sufficient to prove disability, absent some

AO72A
(Rev. 8/82)

evidence to establish a functional loss resulting from that diagnosis. Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990). The medical records during the relevant time period (January 1, 2002 to December 31, 2007) do not reflect that Plaintiff's endometriosis had more than a minimal effect on Plaintiff's ability to work. Accordingly, the Court finds there is substantial evidence to support the ALJ's findings of severe impairments during the relevant time period.

**B.      RFC Determination:**

Plaintiff argues that the ALJ committed legal error in assessing Plaintiff's RFC because he rejected the opinions of Plaintiff's treating physicians and "pulled the RFC out of thin air," and by failing to comply with SSR 96-8p. Plaintiff refers to the opinions of Dr. John Furlow and Dr. T.R. Dykman, and that of Kristy Walker PA-C.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id

-6-

Dr. John Furlow and Dr. Dykman, both of the Fayetteville Diagnostic Clinic, completed separate Attending Physician's Statements on October 19, 2010. (Tr. 407-410, 554-555). The two reports are almost identical, except Dr. Dykman indicated he first treated Plaintiff on October 23, 2007, and Dr. Furlow indicated he first treated Plaintiff on February 28, 2005. (Tr. 407, 554). In addition, Dr. Furlow indicated that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations, and Dr. Dykman indicated emotional factors did not contribute to the severity of Plaintiff's symptoms and functional limitations. (Tr. 407, 554). Both doctors indicated that Plaintiff's physical limitation would have been present prior to December 31, 2007. (Tr. 408, 555). Both doctors severely limited Plaintiff's ability to function in the workplace.

On October 28, 2010, Kristy Walker, PA-C, completed a Medical Statement Regarding Interstitial Cystitis. (Tr. 559-561). In the statement, Ms. Walker opined that Plaintiff could sit for 15 minutes at one time and 60 minutes in a full workday, could lift 5 pounds occasionally and 5 pounds frequently. (Tr. 561). She also opined that Plaintiff's therapy occasionally required bladder instillations to calm her symptoms, which is very limiting for the Plaintiff to perform in a job setting and sometimes even perform simple daily activities required of her. (Tr. 561). Nothing in Ms. Walkers' statement indicated Plaintiff's physical limitations would be present prior to December 31, 2007.

In his decision, the ALJ concluded that the severity of limitations assessed by Dr. Furlow, Dr. Dykman and Ms. Walker were not supported by the available objective evidence of record, and that Function reports completed by Plaintiff and her mother as well as Plaintiff's testimony at the hearing also did not support the severity of limitations assessed in the three reports. He

-7-

stated that he considered the opinions and gave them some, but not great weight, based on their treatment of Plaintiff. (Tr. 18). The ALJ concluded that he was not persuaded that Plaintiff was totally disabled and unable to perform work at a level consistent with his RFC prior to December 31, 2007, noting the evidence indicated Plaintiff lead a relatively active life style caring for her young son, and that Plaintiff hurt her knee wakeboarding in the summer of 2008. (Tr. 19). It is noteworthy that the record does not contain treatment records from Dr. Furlow, and only indicates one office visit with Dr. Dykman during the relevant period of review. See Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007)(an ALJ properly discounts a treating physician's Medical Source Statement where the limitations listed on the form stand alone and were never mentioned in treatment records nor supported by any objective testing or reasoning).

On July 30, 2010, non-examining consultant Dr. Jim Takach, completed a Case Analysis, wherein he reported that "most evidence and RX is post DLI - the MER is INSUFFICIENT to assess impairment severity or functional status < DLI (12/07)." (Tr. 528). On October 15, 2010, non-examining consultant Dr. Bill F. Payne, reported that he reviewed all the evidence in the file and the assessment dated July 30, 2010 was affirmed as written. (Tr. 553).

Plaintiff's own description of her limitations, which is a factor the ALJ can consider, also supports the ALJ's RFC findings. In her Function report dated July 3, 2010, Plaintiff indicated that on a daily basis, she arises, cuddles and plays with her son, takes care of their animals, cooks, may go out and play in the yard or go to do park activities or walks, plays computer games/projects, reads books, takes her son to the library or other children's activities if she is able to, does laundry and gives him baths, feeds and walks the animals, tries to do a little amount of cleaning, waters the yard, and drives when not on pain medication. (Tr. 174-181). At the

AO72A
(Rev. 8/82)

hearing, Plaintiff testified that she would wake up and get her son's lunch ready, get him ready, take him to school, come home , take her pain medication, and tried to get stuff done around the house. (Tr. 41). When her son comes home, she testified that they talked about the day, she would go through his back pack, do a lot of things inside, and sometimes they would go outside and he would play. (Tr. 42). She stated that she did her own grocery shopping and her mother would help her unload them, that she could lift 10 pounds, cook dinner, and when she could, would pick up her son, who weighed 40 pounds. (Tr. 44-45).

Based upon the foregoing, the Court finds that there is substantial evidence to support the ALJ's RFC determination, and the weight he gave the various opinions.

**C.    Credibility Findings:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his decision, the ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements

AO72A
(Rev. 8/82)

concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with his RFC assessment. (Tr. 15).

The ALJ addressed Plaintiff's daily activities, noting that she cared for her young son, played with him, gave him baths, cared for their pets, and was able to take care of her personal needs. (Tr. 14). The ALJ discussed the medical records during the relevant time period, as well as relevant records outside the relevant period. (Tr. 16-17). The ALJ noted that Plaintiff leads a relatively active life style caring for her son and that Plaintiff hurt her knee wakeboarding in the summer of 2008. (Tr. 19).

Based upon the foregoing, the record as a whole, and Defendant's well reasoned arguments, the Court finds there is substantial evidence to support the ALJ's credibility findings.

**IV.     Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed.  The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 21st day of July, 2014.

/s/ Erin L. Setter
HONORABLE ERIN L. SETTER
UNITED STATES MAGISTRATE JUDGE

-10-

AO72A
(Rev. 8/82)